**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

*UNITED STATES OF AMERICA,*     )
                                 )
             *Plaintiff,*   ) *Case No:  4:15-cr-9-RH*
                                 )
*vs.*                           ) *Tallahassee, Florida*
                                 ) *December 15, 2015*
*JAMES DEON KORFHAGE,*      ) *10:10 A.M.*
                                 )
             *Defendant.*   )
_____ )

**TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS**
**BEFORE THE HONORABLE ROBERT L. HINKLE,**
**UNITED STATES DISTRICT JUDGE**

APPEARANCES:

  For the Plaintiff:       Christopher P. Canova
                          Acting United States Attorney
                          By: JASON R. COODY
                              Assistant U.S. Attorney
                              *jason.coody@usdoj.gov*
                          111 North Adams Street
                          Suite 400
                          Tallahassee, Florida   32301

  For the Defendant:      Sanders and Duncan, P.A.
                          By:  BARBARA S. SANDERS
                             DONNA DUNCAN
                             Attorneys at Law
                             *bsanders@fairpoint.net*
                             *ddduncan@fairpoint.net*
                          80 Market Street
                          Apalachicola, Florida   32329



## P R O C E E D I N G S

1

2      (*Call to Order of the Court.*)

3      (*Defendant present.*)

4          THE COURT:  Good morning.  Please be seated.

5          This is United States versus James Deon Korfhage.

6  We're here for a possible change of plea.

7          Mr. Korfhage, let me get you to come forward with

8  your lawyers.  You can come all the way up to the bench, I

9  will be able to talk with you better.

10          MS. DUNCAN:  Good morning, Your Honor.

11          THE COURT:  Good morning.

12          Mr. Korfhage, this hearing has been set because the

13  lawyers told the clerk of court that you might wish to enter a

14  guilty plea in the case.  You don't have to do that.  Whether

15  to plead guilty or not is entirely up to you.

16          Are you okay?

17      (*Ms. Duncan confers with the defendant.*)

18          Try to relax and we'll talk about this.  Are you

19  going to be okay?

20      (*Ms. Duncan confers with the defendant.*)

21          We'll start talking; and then, if you need to stop,

22  you tell me.

23          As I was saying, this hearing has been set because

24  the lawyers told the clerk of court that you might wish to

25  enter a guilty plea in the case.  You don't have to do that.

1    Whether to plead guilty or not is entirely up to you.

2            Before I can accept a guilty plea, I'll talk with you

3    here in the courtroom to make sure this is really what you

4    want to do, to make sure you understand what you're doing, to

5    make sure that there are facts that support a guilty plea to

6    this charge.

7            To do all of that, I'm going to ask you some

8    questions.  We'll have you placed under oath, just like every

9    witness who testifies in federal court is placed under oath.

10   If you don't understand a question, please just tell me.  I'll

11   be happy to ask the question again in a different way.  I'll

12   do that as many times as I need to to make sure you and I are

13   communicating.  If you would like to stop at any point to talk

14   with Ms. Duncan, just tell me that.  We'll stop as many times

15   as you'd like for as long as you'd like so you can talk with

16   your lawyer.

17           You're a little nervous, and that happens to

18   everybody who comes into court.  If you need to pause at some

19   point and gather yourself, you just tell me.  We'll do it

20   however many times we need to so that you can participate

21   fully in this proceeding.

22           Do you understand everything?

23           THE DEFENDANT:  Yes, Your Honor.  Sorry.

24           THE COURT:  Please swear the witness.

25           DEPUTY CLERK:  Please raise your right hand.

1    *JAMES DEON KORFHAGE, THE DEFENDANT, DULY SWORN*

2    DEPUTY CLERK:  Please, state your full name and spell

3  your last name for the record.

4    THE DEFENDANT:  James Deon Korfhage, K-o-r-f-h-a-g-e.

5    THE COURT:  And say -- am I saying "Korfhage"

6  correctly?

7    THE DEFENDANT:  Yes, sir.  I certainly wouldn't

8  argue, anyway.

9    THE COURT:  Tell me the city where you live.

10    THE DEFENDANT:  Buford, Georgia.

11    THE COURT:  And help me out, tell me where Buford is.

12    THE DEFENDANT:  Georgia, sir, Northeast Georgia.

13    THE COURT:  Northeast.  So is it somewhere -- is it

14  northeast of Atlanta?

15    THE DEFENDANT:  Yes, sir.  Sorry.

16    THE COURT:  Tell me your age.

17    THE DEFENDANT:  Thirty-seven.

18    THE COURT:  How far did you go in school?

19    THE DEFENDANT:  Eleventh.

20    THE COURT:  Do you read and write?

21    THE DEFENDANT:  Yes, sir.

22    THE COURT:  What kind of work have you done?

23    THE DEFENDANT:  Trucking.  I own a trucking company,

24  sir.

25    THE COURT:  You own the trucking company?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Long haul, local?

3          THE DEFENDANT:  Long haul; yes, sir.

4          THE COURT:  Have you ever been treated for a mental

5   or psychological problem?

6          THE DEFENDANT:  Bipolar.

7          THE COURT:  When was the last time you saw a

8   healthcare professional for your bipolar disorder?

9          THE DEFENDANT:  About a month ago.

10         THE COURT:  About a month ago?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Do you take medication?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  In the last month, have you been taking

15  the same amount of medication for that whole month?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Have you been taking exactly the amount

18  that was prescribed?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Do you know the medicines you are taking?

21         THE DEFENDANT:  It's Prozac.

22         THE COURT:  Despite the fact that you are on Prozac

23  and have been diagnosed with bipolar disorder, are you able to

24  focus on your affairs, evaluate your circumstances, make good

25  decisions?

1      THE DEFENDANT:  Yes, most of the time.

2      THE COURT:  Have you been able to understand the

3  charges and what's going on in the court case, talk with your

4  lawyers?

5      THE DEFENDANT:  Yes, Your Honor.

6      THE COURT:  Ms. Duncan, has Mr. Korfhage been able to

7  communicate with you about the case, provide you the kinds of

8  assistance that you need out of any defendant in a case?

9      MS. DUNCAN:  Yes, sir, he has.

10      THE COURT:  Has there been any indication at all that

11  he's not fully competent to do that in any respect?

12      MS. DUNCAN:  No indication, Your Honor.

13      THE COURT:  Have you taken any alcohol or drugs in

14  the last 24 hours, other than the prescribed Prozac?

15      THE DEFENDANT:  No, Your Honor.

16      THE COURT:  Let's talk about rights you have as a

17  person charged with a crime in federal court.

18      You don't have to plead guilty.  As I said before,

19  you are welcome to continue with your not guilty plea.

20      You have the right to trial by a jury.

21      You have a right to be represented by a lawyer at

22  every stage of the case, including at the jury trial.  If you

23  are unable to afford a lawyer, you have the right to have a

24  lawyer appointed.

25      You have the right to remain silent all through the

1 case, including at a jury trial.  So at the jury trial, you

2 would not be required to testify or say anything at all.  You

3 could testify if you wanted to.  Whether to testify or not

4 would be entirely up to you.

5        At the jury trial you would have the right to

6 confront witnesses.  That means all of the witnesses would

7 come into the courtroom.  They would testify right here in

8 open court with you present.  There would not be any secret

9 evidence.  It would all be presented as part of the public

10 trial.

11        You would have the right to present evidence in your

12 own defense.  You would have the right to compel the

13 attendance of witnesses.  So, if there are people that you

14 would like to have testify at the trial, they could be

15 required to come to court to testify.

16        And at the jury trial, the government would be

17 required to prove your guilt beyond any reasonable doubt.

18        Do you understand all of those rights?

19        THE DEFENDANT:  Yes, Your Honor.

20        THE COURT:  Now, if you plead guilty, you will be

21 giving up all of the rights related to a trial.  All of those

22 things I just told you about what would happen at trial, you

23 would be giving up all of those rights.  Do you understand?

24        THE DEFENDANT:  Yes, Your Honor.

25        THE COURT:  If you plead guilty, there's not going to

1   be a trial of any kind; and that's because by pleading guilty,

2   you admit that you are guilty, so there is no reason to have a

3   trial, no reason to have a jury come in to determine whether

4   you're guilty or not.  Do you understand?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  It may be that you have some defense to

7   this charge.  I don't know whether you do or not.  But if you

8   plead guilty, it won't matter, because by pleading guilty, you

9   waive -- that is, you give up -- any defense you might have

10   had.  Do you understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  In that respect, let me make sure with

13   the lawyers, there was a motion to dismiss the indictment or

14   limit Section 2422 on constitutional grounds.  I read that.

15   Candidly, I would have denied the motion, what I understood of

16   the motion.  My understanding of the plea is that that will be

17   one of the defenses -- potential defenses that is waived; is

18   that correct, or are you preserving that for appeal?

19           MS. SANDERS:  If the court would allow us to preserve

20   it, I would like to preserve it.  I understand the court's

21   ruling and the assessment of the motion.

22           THE COURT:  It's really not -- the question is not

23   for me.  The question is for the government.

24           MR. COODY:  Your Honor, in abundance of what we're

25   trying to accomplish here, I have no objection to allowing it

1  to be preserved, but I understood the court said, if ruled

2  upon, the court would deny it.  So with that being the caveat,

3  we would not oppose them preserving it.

4         THE COURT:  All right.  I did read the motion, and I

5  gave it careful consideration.  I had not gotten an order out

6  when I was told that there was likely to be a plea in the

7  case, because I have enough controversies to resolve without

8  the ones that the parties agree on.

9         But my ruling is to deny the motion, but I do

10  understand from what I just have been told that that issue

11  will be preserved for appeal.

12         MS. SANDERS:  Thank you, Your Honor.

13         THE COURT:  So, Mr. Korfhage, other than the issue

14  raised in the motion to limit Section 2422 on constitutional

15  grounds, other than that defense, you will be waiving any

16  defense you have to the charge in the case.  Do you

17  understand?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  The charge against you is that you used

20  an instrumentality of interstate commerce -- the internet --

21  to entice a 17-year-old to have sex with you.  Do you

22  understand the charge?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Have you talked with Ms. Sanders and

25  Ms. Duncan about what the government would have to prove to

1  establish your guilt of that charge?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Let's talk about the facts of the case.

4  The government had tendered a statement of facts.  I read it

5  so that I could be prepared for the hearing.  As I came in,

6  the word was sent back that Mr. Korfhage had not signed the

7  statement of facts, which is perfectly appropriate.  That's

8  the government's version of what happened.  He does not have

9  to agree with it.

10         Do I have that right; there is not a written

11 statement of facts that's going to be signed by both sides?

12         MR. COODY:  That's correct, Your Honor.

13         MS. DUNCAN:  Correct, Your Honor.

14         THE COURT:  So let's talk about what happened.

15         As I said, I read the government's version, so let's

16 go through this a little bit.  You started communicating with

17 a woman online.  She's been identified as L.K.; is that right?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And it turns out she's 17 years old?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  You knew that before you had sex with

22 her?  Let's put it this way:  She had told you she was 17

23 before you had sex with her.  Is that true?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  You've told me you're 37.  You exchanged

information back and forth, including the possibility of

having sex, yes?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Then she sneaked out of her house; you

picked her up at her residence behind her house one night?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Took her to a motel?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Before you picked her up, you already

registered for a room at the hotel; is that right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You took her to the hotel room, and the

two of you had sex.  True?

THE DEFENDANT:  Yes, Your Honor.  Can I add anything

to that?

THE COURT:  You can tell me more about that if you

wish.

MS. DUNCAN:  I would like him to address me first,

Your Honor, if that's okay.

THE COURT:  Sure.

(*The defendant confers with Ms. Duncan*.)

MS. DUNCAN:  Your Honor, what my client is addressing

is, we had -- because we agree that there are sufficient

elements to plead guilty to Count One, the enticing, with the

underlying statute being statutory rape in the state of

1  Florida, what my client is referring to is that there are some

2  facts within the statement of facts that we do not agree to in

3  which the state returns back to a position where there was

4  some force involved in part of the sexual contact, Your Honor,

5  and we're disputing that fact.  And the government is aware

6  that we're taking that position, Your Honor.  And we believe

7  that it is not necessary for the purposes of pleading to

8  enticement, 2242(b), Your Honor, with an underlying crime of

9  statutory rape.

10      THE COURT:  I think that's correct.  I don't think

11  force is an element of this offense.  So that's not what I

12  want to ask you about.  I do want to ask you this, though.

13  She had told you that she was 17.

14      THE DEFENDANT:  Not in the beginning, Your Honor.

15      THE COURT:  Well, at some point before you had sex,

16  she had told you she was 17?

17      THE DEFENDANT:  Yes, Your Honor.

18      THE COURT:  And did you have any reason to think she

19  was not 17?

20      THE DEFENDANT:  Tell him?

21      MS. DUNCAN:  Speak, he's asking you a question.

22      THE DEFENDANT:  During the conversations, Your Honor,

23  she was talking about certain types of taboos, Your Honor, on

24  a different website that they have profiles of.  And so at the

25  time she was --

1        (*The defendant confers with Ms. Duncan.*)

2        THE DEFENDANT:  She was presenting herself older,

3   Your Honor.  And then she would go back and forth between

4   that, and it was because of a -- of -- see, she said she

5   had -- I'm sorry.

6        THE COURT:  That's all right.  Take your time and

7   tell me.

8        Mr. Coody, the government's position, does he have to

9   know that she was under 18?

10        MR. COODY:  He does, Your Honor.  And specifically

11   the communications that the government has laid out in its

12   statement of facts articulate the defendant acknowledged in

13   writing, communicating back and forth with L.K., not only that

14   she was of a certain age, specifically 17, that she had just

15   turned 17 a month prior, that she was in high school.  There

16   were other contextual circumstances that one would understand,

17   and the defendant would understand based upon his admissions

18   about her being in school, things of that nature, that were in

19   context with the overtures, the government would argue, were

20   enticement.

21        THE COURT:  I understand.  I did read through the

22   statement of facts fairly quickly, but I knew there were

23   references to being 17.

24        Mr. Korfhage, here's my question for you:

25        When you went in that hotel room with this woman, how

1 | old did you think she was?

2 | THE DEFENDANT: Well, Your Honor, I mean, like, I --

3 | she told me she was 17. It was -- that was the last

4 | conversation we had, is that she was 17.

5 | THE COURT: As far as you knew, that was correct?

6 | THE DEFENDANT: Yes, Your Honor.

7 | THE COURT: Let's talk --

8 | MS. SANDERS: Your Honor, I just did want to point

9 | out that there is a *Daniels* case out of the Eleventh Circuit

10 | that says that the government has to prove she was under 18,

11 | but the government does not have to prove that the defendant

12 | knew of the age of L.K., and I can get you a cite for that.

13 | It's *Daniels* --

14 | THE COURT: That's okay. But that's the -- it's the

15 | 2422 case?

16 | MS. SANDERS: 2422, absolutely.

17 | THE COURT: Well, first, the government's showing

18 | certainly establishes a factual basis, even if knowledge is an

19 | element of the offense, and that Mr. Korfhage has just said

20 | the same thing. So, while I appreciate the citation, but I

21 | think either way, if Mr. Korfhage chooses to plead guilty,

22 | what he's told me would be a sufficient basis to accept the

23 | plea.

24 | Let's talk about sentencing.

25 | The maximum sentence that you face on this charge is

```
 1   life in prison.  You face a fine up to a million dollars.  You
 2   could be put on supervised release.  That's a time when there
 3   are restrictions on your activities after release from prison.
 4   You could be put on supervised release for the rest of your
 5   life.
 6          You will be required to pay a $100 special
 7   assessment.
 8          You may be required -- I haven't checked.  You could
 9   be required to make restitution to any victim who suffered a
10   financial loss as a result of the offense.
11          Mr. Coody, is there likely to be a claim for
12   restitution?  Do you know?
13          MR. COODY:  I don't know that there is likely to be a
14   claim of restitution, Your Honor.  But I may have misheard
15   what the court said with regard to the fine amount.  In the
16   plea agreement, the government listed the fine amount as
17   $250,000.  If that's incorrect, I was just flipping to the
18   statute, I think the court said a million, but I'm checking to
19   see which way it is.
20          THE COURT:  All right.  Do.  With a maximum of life,
21   it's --
22          MR. COODY:  The court has correctly stated the
23   penalty in terms of the maximum imprisonment sentence
24   involving the mandatory minimum of ten years, a hundred dollar
25   special assessment, and then the term of supervised release, I
```

believe, the court correctly laid out the potential maximum is
life and the minimum term of supervised release would be five
years.

THE COURT:  And I hadn't gotten to the minimums yet,
but let me get to those.  And you and Mr. Samples can double
check with the statute, with the maximum of life, what the
maximum fine is.

Do you understand those maximum penalties?  So the
maximum is life in prison, life on supervised release?

THE DEFENDANT:  (Nods head.)

THE COURT:  You're nodding.

THE DEFENDANT:  Yes, Your Honor.  Sorry.

THE COURT:  There also is a minimum prison sentence
and a minimum term of supervised release.  The minimum prison
sentence is ten years in prison.  So the shortest sentence I
will be able to give you is ten years in prison.  There is one
possible exception.  I'll talk with you about that in just a
minute.  But unless the exception applies, I'll have to
sentence you to at least ten years in prison.  Do you
understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The minimum term of supervised release is
five years.  So I will have to sentence you to at least five
years on supervised release, as I said, up to life.

Here's the possible exception to the minimum

1    mandatory ten-year sentence term:

2           The law provides that, if a defendant cooperates with

3    the government, if you provide assistance to the government in

4    the investigation or prosecution of others; and, if the

5    government decides that that assistance rises to the level of

6    substantial assistance in the investigation or prosecution of

7    others, then the government can file a motion saying that you

8    have provided substantial assistance.

9           If the government files such a motion, I'm no longer

10   required to sentence you to at least ten years in prison.  I

11   still could sentence you to anything up to life, but I

12   wouldn't have to sentence you to at least ten years.  Do you

13   understand?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Have you talked with Ms. Duncan and

16   Ms. Sanders about substantial assistance -- what that means

17   and how that system works?

18          THE DEFENDANT:  No, Your Honor.

19          THE COURT:  And this may be a case where it is just

20   not a reasonable prospect.

21          MS. SANDERS:  That is correct, Your Honor.  We did

22   not specifically address substantial assistance, because there

23   are no other participants in this incident.

24          THE COURT:  And no reason to think Mr. Korfhage knows

25   about other criminal activity?

1          MS. SANDERS:  I wouldn't think so for purposes of a

2    5K.  If something happens down the road, I really didn't talk

3    to him about that.

4          THE COURT:  All right.

5          So, Mr. Korfhage, basically, the law is what I just

6    told you.  If you know about criminal activity by others, if

7    you provide substantial assistance to the government in the

8    investigation or prosecution of others, then the government

9    could file a substantial assistance motion, and I wouldn't

10   have to sentence you to at least ten years.

11         That comes up more often in cases that involve

12   multiple participants, where one can give information about

13   others.  In an offense of this nature, where it's just one

14   person involved, there wouldn't be anybody else involved in

15   the offense that you could provide information about.  But if

16   you know about other criminal activity, then that could come

17   up.

18         MS. SANDERS:  Your Honor, we did touch on it

19   tangentially because there are two cooperating witnesses in

20   Mr. Korfhage's case who are incarcerated, and so we discussed

21   in general terms how that works.

22         THE COURT:  All right.  I told you the minimum

23   sentence and the maximum sentence.  Let me talk to you about

24   how I will go about determining the actual sentence in the

25   case.

1          To do that I'll consider a number of things.  One

2   thing I will consider is the guideline range under the United

3   States Sentencing Guidelines.

4          Have you talked with your lawyers about the possible

5   guideline range?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  You have experienced lawyers; they have

8   dealt with the sentencing guidelines many times, but they

9   don't necessarily know the guideline range in this case.

10  There are at least a couple of reasons for that.

11         For one thing, they may not know all of the facts

12  that go into calculating the guideline range.  Also, there

13  sometimes are disagreements about what the guidelines mean or

14  how they apply in a case.  If there are disagreements, I

15  resolve them.  Your lawyers don't necessarily know what

16  rulings I'll make, just like the government's lawyer doesn't

17  necessarily know what rulings I'll make.

18         Do you understand?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  If it should turn out that any estimate

21  your lawyers have given you about the guideline range is not

22  correct, that will not be a basis to withdraw your guilty

23  plea.  Do you understand?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  No matter what sentence I impose in the

1    case, it will not be a basis to withdraw your guilty plea.  Do

2    you understand that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  If you don't like my sentence, you can

5    appeal to a higher court, but you can't take back your guilty

6    plea.  Do you understand?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  I told you I'll consider the guideline

9    range.  I'll also consider other things.  I can impose a

10   sentence that is within the guideline range.  I also can

11   impose a lower sentence or a higher sentence -- anything up to

12   the statutory maximum.  Do you understand?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  All of that is a long way of saying the

15   only thing you can be sure of about the sentence as you stand

16   here this morning is that it won't be shorter than ten years

17   in prison and it could be anything up to life.  Other than

18   that, you can't be sure of anything.  Do you understand?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  There is a plea agreement in the case and

21   a supplement.  In this division anytime there is a plea

22   agreement, there is a supplement.  The supplement indicates

23   whether or not a defendant has agreed to cooperate with the

24   government.  If so, it sets out the terms of the cooperation

25   agreement.  The plea agreement addresses any other subject.

The supplement is always sealed.  It does not become part of the public record of the case.  The plea agreement itself is not sealed.  It does become part of the public docket.  This way nobody can tell from the public docket whether a defendant has or has not agreed to cooperate with the government.

I'm going to hand these papers back down to you.

The plea agreement does not include a reference to preserving the right raised in the motion.

MS. SANDERS:  That is correct, it does not.

THE COURT:  That may need to be in writing.  Frankly, that's the kind of thing I look up every time.  So I'm not sure, as I sit here right now that it needs to be.  It may need to be.  You may want to interlineate that agreement to show that that has been preserved.  If you want a reference to the motion, it's ECF 61.

THE PROBATION OFFICER:  Your Honor, while we have a moment, I checked, and I couldn't find a reference to a fine above $250,000 for Count One.

MS. SANDERS:  What's the docket number, Judge?

THE COURT:  ECF Number 61.

MR. COODY:  Your Honor, for purposes of the record, I'll read in what we have written into the plea agreement.

On page 4 of the plea agreement, under the term 3, Sentencing, paragraph C, what had been previously typed is, "The parties reserve the right to appeal any sentence impose,"

1   we have interlineate, comma, "including ECF Document 61 and

2   the denial of the motion by the court on the record."  And

3   both parties have initialled that inclusion.

4           MS. SANDERS:  Thank you, Your Honor.

5           THE COURT:  Mr. Korfhage, is that your signature at

6   the end of the plea agreement and at the end of the

7   supplement?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Before you signed those, did you read

10  them line-by-line and word-by-word?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Did you understand every word of them?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Do you agree to every word of them?

15     (*The defendant confers with Ms. Duncan.*)

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Just the plea agreement and supplement,

18  you agree to every word of those?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Do those include everything you've agreed

21  to with the government?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Has anybody threatened you or pressured

24  you or used force to get you to plead guilty?

25          THE DEFENDANT:  No, Your Honor.

1    THE COURT:  Have you ever had any discussions with

2  anyone from the government -- the prosecutor, the case agent,

3  any law enforcement officer, federal, state official, anybody

4  on the government's side of the case -- on the subject of the

5  sentence that will be imposed in this case?

6    THE DEFENDANT:  No, Your Honor.

7    THE COURT:  Have you ever talked with any of those

8  people about pleading guilty or what will happen if you plead

9  guilty?

10    (*The defendant confers with Ms. Duncan.*)

11    Have you ever talked -- what I'm trying to find out

12  is if you've had any discussions with any law enforcement

13  officer or prosecutor, anybody on that side of the case, about

14  pleading guilty or what will happen if you plead guilty.

15    THE DEFENDANT:  Yes, Your Honor.

16    THE COURT:  Tell me about that.

17    THE DEFENDANT:  Just what I could get, really, what

18  the minimum and maximum was.

19    THE COURT:  You had a discussion with the law

20  enforcement officer or prosecutor about that?

21    MS. DUNCAN:  Your Honor, myself, Ms. Sanders, and

22  Mr. Coody, and Agent Laird had a very brief meeting in which

23  Mr. Coody came in and spoke with Mr. Korfhage, basically, just

24  simply about the case and what he might be expecting and --

25    THE COURT:  That's exactly the question I asked, so I

1  appreciate your answer.

2        Were your lawyers present with you during that whole

3  discussion?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  Have you ever had a discussion like that

6  when your lawyers were not with you?

7        THE DEFENDANT:  No, Your Honor.

8        THE COURT:  Have you had as much time as you'd like

9  to talk about your case with your lawyers?

10        THE DEFENDANT:  No, but --

11        THE COURT:  If the answer to that is no, you tell me

12  no, and you can talk with them more.  This is your

13  opportunity.  I don't want you pleading guilty until you've

14  had as much time as you'd like to talk about your case with

15  your lawyers.

16        MS. DUNCAN:  You have to answer that question.

17        THE DEFENDANT:  Yes, Your Honor, I have.

18        THE COURT:  Are you sure?

19        THE DEFENDANT:  Yes, Your Honor.

20        THE COURT:  Have your lawyers answered all of your

21  questions?

22        THE DEFENDANT:  Yes, Your Honor.

23        THE COURT:  Are you satisfied with the way they have

24  represented you?

25        THE DEFENDANT:  Yes, Your Honor.

1     THE COURT:  Do you have any complaints at all?

2     THE DEFENDANT:  No.

3     THE COURT:  Ms. Duncan and Ms. Sanders, can each of

4  you assure me that so far as you're aware this plea is freely

5  and voluntarily made with full knowledge of the consequences,

6  and that there are no agreements or understandings of any kind

7  with the government other than as set out in the plea

8  agreement and supplement?

9     MS. DUNCAN:  Yes, Your Honor.

10     MS. SANDERS:  I can, Your Honor.

11     THE COURT:  Mr. Coody, can you give me the same

12  assurance for the government?

13     MR. COODY:  I can, Your Honor.

14     THE COURT:  Mr. Korfhage, knowing the rights you will

15  be waiving and considering everything we've discussed, how do

16  you plead to the charge of enticing a 17-year-old to engage in

17  sex?

18     THE DEFENDANT:  Can I get just a second, Your Honor?

19     THE COURT:  Surely.

20   (*The defendant confers with Ms. Duncan*.)

21     MS. DUNCAN:  Your Honor, would you please repeat the

22  question?

23     THE COURT:  Yes.  The question is:  How do you plead

24  to Count One of this indictment, the charge of using an

25  instrument of interstate commerce to entice a minor, a

1   17-year-old, to engage in sex?

2           THE DEFENDANT:  Guilty.

3           THE COURT:  Are you pleading guilty because you are,

4   in fact, guilty of this offense?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  I find that this plea has been entered

7   knowingly, voluntarily, and intelligently.  I find that the

8   plea is supported by a factual basis.  I accept the plea and

9   adjudge Mr. Korfhage guilty.  I order a presentence report.

10          Mr. Korfhage, the probation officer is right over

11  here in the courtroom today.  He's going to be preparing a

12  presentence report.  That report is the first way I get

13  information to consider on sentencing.  If there is

14  information that you would like me to have, tell it to the

15  probation officer.  If there are people that you would like

16  him to talk to, tell him who they are and how to get in touch

17  with them so that he may consider doing that.  You should

18  cooperate with him fully in this process.

19          You have the right to have your lawyers present when

20  you talk to the probation officer.  You don't have to do that,

21  it's up to you, but it's a right that you do have.

22          When the report comes out, you'll have the right to

23  read it.  You should do so very carefully.  If anything about

24  that report is not correct, or anything is left out that you

25  think should be in it, you need to let your lawyers know that

1   right away.

2        The court's rules have strict time limits within

3   which any objections have to be made.  So it's important for

4   you to go over that report very carefully with your lawyers as

5   soon as you can.

6        If there are objections, the lawyers for the two

7   sides and the probation officer will try to sort it out.  If

8   everybody is not able to agree, then I will resolve the

9   dispute at the sentencing hearing.  To get that process

10  started, you've got to go over that presentence report very

11  carefully with Ms. Duncan or Ms. Sanders.

12       MS. DUNCAN:  And, Your Honor, we are requesting our

13  presence at the interview.

14       THE COURT:  Okay.  Sentencing is set for Thursday,

15  March the 3rd, 2016, at 2:00 in the afternoon.

16       What else, if anything, do we need to do in

17  Mr. Korfhage's case this morning?

18       MR. COODY:  Nothing from the government.

19       MS. DUNCAN:  One moment, Your Honor.

20       THE COURT:  All right.

21     (*The defendant confers with Ms. Duncan.*)

22       MS. SANDERS:  There are separatees that require him

23  to be in the SHU, and I will discuss that with the government,

24  Judge.

25       THE COURT:  Okay.  That needs to be taken up in the

1    first instance with the Bureau of Prisons, the officials, the

2    officials at the detention center.

3            Anything else?

4            MR. COODY:  No, Your Honor.

5            MS. DUNCAN:  No, Your Honor.

6            THE COURT:  Thank you all.  We'll be in recess.

7        (*The proceedings adjourned at 10:43 a.m.*)

8                    *   *   *   *   *   *   *   *

9

10

11

12   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.  Any
13   redaction of personal data identifiers pursuant to the
     Judicial Conference Policy on Privacy are noted within the
14   transcript.

15

16

17   *Judy A. Gagnon*                        7/17/2016
     Judy A. Gagnon, RMR, FCRR              Date
18   Official U.S. Court Reporter

19

20

21

22

23

24

25